1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  GIOI NGO,

9                     Plaintiff,

10        v.

11  SUPREME ALASKA SEAFOODS, INC.,
    et al.,
12

13                     Defendants.

14

CASE NO. 05-727JLR

ORDER

15

16

## I.  INTRODUCTION

17

18

19

20

21

22

23

24

This matter comes before the court on a motion for summary judgment from Defendant Supreme Alaska Seafoods, Inc. (Dkt. # 20).  Plaintiff Gioi Ngo opposes the motion or in the alternative, seeks a continuance (Dkt. # 22).  Neither party has requested oral argument and the court finds this motion suitable for disposition based on the parties' briefing and accompanying declarations and exhibits.  For the reasons stated below, the court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's request for a continuance.

## II.  BACKGROUND

25

26

27

Mr. Ngo worked as a seaman aboard a fishing vessel, the M/V EXCELLENCE, owned by Defendant Supreme Alaska Seafoods, Inc. ("Supreme Alaska").  Assuming the

28

ORDER – 1

admissibility and truth of all of the evidence presented, the court pieces together the following facts.  In September of 2003, Mr. Ngo was cleaning a machine in the factory of the ship.  At the time, he was either standing on a stool or stepping onto a stool from a catwalk when the stool's leg sank into a hole in the grate on which it stood.  Mr. Ngo fell from the stool and struck his head and shoulder.  He sustained various injuries which may include his current memory loss, either for psychological reasons due to depression or for biological reasons related to head trauma.  At the time of his deposition in December of 2005, Mr. Ngo recalled almost nothing about the accident.

Mr. Ngo filed suit alleging a cause of action for negligence under the Jones Act, 46 U.S.C. § 688, unseaworthiness under maritime law, and a demand for maintenance and cure.  On February 9, 2006, Supreme Alaska moved for summary judgment on Mr. Ngo's negligence and unseaworthiness claims.  The court denied the motion without prejudice and granted Mr. Ngo's request for a continuance under Fed. R. Civ. P. 56(f) ("Rule 56(f)") so that he could board the vessel with an interpreter in hopes of refreshing his memory about the accident.  Mr. Ngo visited the vessel on March 30, 2006, but gained no recollection from the experience.  Supreme Alaska now renews their motion for summary judgment.

## III.  ANALYSIS

Summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The non-moving party must respond by setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  When considering the motion, the court must view the facts in the light most favorable to the non-moving party and draw reasonable inferences therefrom.  Matsushita Elec. Indus. Co. v. Zenith Radio

ORDER – 2

Corp., 475 U.S. 574, 587 (1986).  Summary judgment is not appropriate where the evidence is sufficient to permit a reasonable jury to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  By contrast, if the evidence is "merely colorable" or is "not significantly probative," summary judgment may be proper.  Id. at 249-50 (internal citations omitted).

**A.      Jones Act Claim**

In order to prevail on a Jones Act negligence claim, Mr. Ngo must show that (1) Supreme Alaska owed him a duty to provide a reasonably safe work environment, (2) they breached that duty, (3) they knew or should have known of the dangerous condition constituting the breach, and that (4) Supreme Alaska's breach was a contributing cause, however slight, of his injury.  Ribitzki v. Canmar Reading & Bates, Ltd., 111 F.3d 658, 662-63 (9th Cir. 1997).

Here, Mr. Ngo has not provided enough evidence to create a triable issue of fact for the jury as to whether Supreme Alaska breached its duty to provide a safe work environment.  Mr. Ngo's vague contention that "the company" positioned the chair or stool from which he fell, Ngo Dep. at 59, is insufficient to show that Supreme Alaska intended or expected employees to use the stool to perform this job function.  Other than his own accident, Mr. Ngo provides no evidence that standing on the stool to access the vessel machinery is somehow dangerous.  Instead, Mr. Ngo flatly urges the court to take judicial notice that the practice is "not very safe" when conducted aboard an ocean-bound vessel.  Pl.'s 2d Opp'n at 2.[1]  Such an unsubstantiated assertion is not a proper subject of

---

[1] Both parties have incorporated arguments from prior briefing on Defendant's original summary judgment motion.  For ease of reference, the court cites to the original motion and the renewed motion as the "1st" and "2d," respectively.

ORDER – 3

1    judicial notice.  See Fed. R. Evid. 201(b).  Rather, the relative safety of using the stool is

2    a critical element over which Mr. Ngo carries the burden of proof.

3           What is more, Mr. Ngo does not provide any evidence that the stool itself or the

4    grate beneath it had a structural defect, slippery surface, or the like.  Mr. Ngo simply

5    describes the stool as having four legs and "something across it so you can stand on it,"

6    and is the type "you use to stand on to do work."  Ngo Dep. at 60.  Based on the record

7    before the court, the stool could be anything from a sturdy stepping stool to a spindly

8

9    antique.  Id. at 59-60.  The fact that Mr. Ngo stood on a chair of unknown qualities to

10   clean a machine does not create an issue of fact for trial on the question of breach.

11   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ("[A] complete failure of proof

12   concerning an essential element of the non-moving party's case necessarily renders all

13   other facts immaterial.).

14
15          Even assuming a breach of duty on the part of Supreme Alaska, there is no

16   evidence that Supreme Alaska had actual or constructive knowledge of the supposedly

17   unsafe working condition.  There is no evidence that Mr. Ngo ever communicated the

18   condition to his superiors or that anyone aboard the vessel even knew of the stool.  Nor is

19   there any admissible evidence by which a jury could determine whether Supreme Alaska

20   should have known that the condition existed.  The court declines to infer a material

21   factual dispute from Mr. Ngo's hearsay evidence, which consists of a declaration from his

22
23   attorney, John Merriam, in which Mr. Merriam relays information that Mr. Ngo allegedly

24   divulged in their initial client-counseling session.  See Orr v. Bank of America, NT & SA,

25   285 F.3d 764, 774-777 (9th Cir 2002) (holding that hearsay statements were inadmissible

26   at summary judgment).  Mr. Merriam contends that Mr. Ngo told him facts during that

27   meeting which Mr. Ngo no longer remembers.  While the court sympathizes with Mr.

28

ORDER – 4

Ngo's current condition, no hearsay exception applies to the evidence.[2]  Further, the court denies Mr. Ngo's request to continue the summary judgment motion so that his counsel may depose others who were also present at the meeting.  The court also declines Mr. Merriam's request to recuse himself in order to serve as a witness.  Neither request cures the hearsay problem.

**B.      Unseaworthiness Claim**

A ship owner has an absolute duty to furnish a seaworthy ship.  Ribitzki, 111 F.3d at 665 (citing Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960)).  In order to prevail on a seaworthiness claim, Mr. Ngo must show that the warranty of seaworthiness applied to him and his task, he was injured by equipment that was either part of the ship or an appurtenant appliance, the equipment was not reasonably fit for its intended use, and that the unseaworthy condition proximately caused his injury.  Ribitzki, 111 F.3d at 664.  A seaworthiness claim can arise from a defective physical condition, however temporary, and does not require actual or constructive knowledge on the part of the ship's owner or employer.  Id.

_____

[2]Mr. Ngo seeks admission of Mr. Merriam's statements under two exceptions to the hearsay rule: Fed. R. Evid. ("FRE") 804(b)(6) and FRE 807.  The court finds that the present case bears no likeness to the witness tampering contemplated by FRE 804(b)(6) and that FRE 807 is inapplicable.  First, FRE 807 requires that the evidence bear the circumstantial guarantees of trustworthiness equivalent to the specifically enumerated hearsay exceptions in FRE 803 and FRE 804.  Mr. Ngo has made no showing that the evidence is reliable by this standard.  Second, the evidence must be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts."  Fed. R. Evid. 807.  Mr. Ngo has also not made this showing.  As just one example, testimony from another crew member could be equally as persuasive as Mr. Ngo's testimony on a variety of issues.  The court notes that Mr. Ngo is not the first injured plaintiff to suffer memory loss, and such a deficiency is not insurmountable in gathering probative, admissible evidence and preparing a case for trial.

ORDER – 5

As with Mr. Ngo's Jones Act claim, without information on the qualities of the stool and the condition of the grate on which it stood, a reasonable jury would have no way to determine whether the stool was reasonably fit for its intended use.  Evidence must be of a sufficient "quantum or quality" to support a jury finding that the plaintiff has met his burden.  Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1222 (9th Cir. 1995).  In Triton, the Ninth Circuit affirmed summary judgment on the basis that the "scintilla" of evidence available – i.e., competing testimony of two expert witnesses who did not personally examine an allegedly defective product – was insufficient to warrant submission to the jury.  Id. at 1221-22.  The court stated, "[t]hese circumstances would impose upon the jury the unenviable task of listening to two expert's opinions unsupported by any physical evidence to bolster either opinion." Id. at 1222.  The barren record in this case presents a similar problem.  No reasonable jury could find that Mr. Ngo has met his burden on his unseaworthiness claim without some evidence relating to the actual condition aboard the vessel.  Of course, the court does not intend to suggest that any particular type of evidence would be essential to surviving summary judgment in this case, but something beyond a theoretical portrait of the accident scene is required.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Defendant's motion for summary judgment on Plaintiff's Jones Act and unseaworthiness claims (Dkt. # 20) and DENIES Plaintiff's request for a continuance (Dkt. # 22).

The court further ORDERS Mr. Ngo to show cause by June 2, 2006 why the court should not dismiss this case in its entirety and enter judgment in favor of Defendant. As to the remaining Defendants in this case, the court previously dismissed Defendant Alaska JV Seafoods from this action pursuant to the parties' stipulation (Dkt. # 8).  The

court also notes that Mr. Ngo has not yet served Defendant M/V EXCELLENCE and 120 days have passed since Mr. Ngo filed his complaint naming the vessel.  See Fed. R. Civ. P. 4(m).  The only remaining claim in this case is Mr. Ngo's request for maintenance and cure, which appears to have been resolved.  Should Mr. Ngo fail to respond to by June 2, 2006, the court will dismiss the action.

        Dated this 15th day of May, 2006.

                                        _____
                                        JAMES L. ROBART
                                        United States District Judge

ORDER – 7